| | |
|---|---|
| JAMAL A. DAVIS,<br>　　　　　　　　　Petitioner,<br>　vs.<br>MARTIN BITER, WARDEN, Kern Valley State Prison<br>　　　　　　　　　Respondent. | Case No. 12cv3001-BEN (BLM)<br>**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

　　　Petitioner JAMAL A. DAVIS, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction in California state court for conspiracy to commit murder. (Docket No. 8.) On December 19, 2014, after thoroughly considering both Petitioner and Respondent's arguments, U.S. Magistrate Judge Barbara Lynn Major issued a Report and Recommendation, recommending that the petition be denied. (Docket No. 44.) Pursuant to 28 U.S.C. § 636(b), the Court has conducted a *de novo* review of the entire file, including Petitioner's objections to the report. (Docket No. 45.) For reasons discussed below, the Court **ADOPTS** the Report and Recommendation and **DENIES** the petition.

# BACKGROUND

The Magistrate Judge's report relied upon the facts from the California Court of Appeal's reasoned opinion. (Lodgment 6.) Absent clear and convincing evidence to the contrary, the Court presumes the state court's factual determinations to be correct.[1] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court's decision will not be overturned on factual grounds unless the factual determinations were objectively unreasonable in light of the evidence presented); *see also Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004) ("[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."). Because the Court writes primarily to the parties, it is unnecessary to reiterate the full facts of this case. As such, for a detailed description of the case's factual and procedural history, the Court refers to the Report and Recommendation. Here, the Court draws the following overview from the California Court of Appeal's opinion:

> This case arises from the gang-related shooting of two victims, Ricky Wyatt (who died) and Philemon Winston (who survived), and defendant's subsequent conduct of walking in a neighborhood "hunting" for other victims to shoot on behalf of his gang. Defendant is a member of the West Coast Crips gang. The prosecution's theory was that the shootings and subsequent hunting for other victims were committed by West Coast Crips gang members in retaliation for an earlier shooting of a West Coast Crips gang member by a rival Lincoln Park gang member. The witnesses to the Wyatt/Winston shooting described three assailants, and the prosecution alleged that defendant was one of the three. Testifying on his own behalf, defendant did not dispute that he was present during the Wyatt/Winston shooting, but claimed that he did not know his two companions (West Coast Crips gang members Donald Bandy and Greg Wanton) were planning to shoot someone. The jury acquitted defendant of the allegations based on the Wyatt/Winston shooting. With respect to a conspiracy to commit murder allegation based on the conduct after the Wyatt/Winston shooting, the prosecution's theory was that this offense was committed by defendant, defendant's twin brother (Jamel Davis), and another gang member (Rashad Ware). Defendant did not dispute that he was present, but claimed he had no intention of actually

---

[1] Because the California Supreme Court denied Petitioner's petition for review without comment or citation to authority, the Court "looks through" to the underlying appellate court decision and presumes that the highest court's unexplained opinion rests upon the same grounds. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).

>shooting someone but was merely pretending to engage in the "hunting" activity to avoid disciplinary action against him by his gang.

(Lodgment 6 at 2.)

On August 21, 2009, a jury in San Diego County found Petitioner guilty of one count of conspiracy to commit murder (California Penal Code (Penal Code) §182(a)(1)) and found that Petitioner committed the offense to benefit a criminal street gang (Penal Code §186.22(b)). The jury acquitted Petitioner of one count of murder, one count of attempted murder, and another count of conspiracy to commit murder. (Lodgment 1 at 444, 538.) The trial court sentenced Petitioner to an indeterminate term of twenty-five years to life in state prison. (*Id.* at 444, 542.) Petitioner immediately appealed his conviction to the California Court of Appeal, which affirmed Petitioner's conviction in a written opinion on June 28, 2011. (Lodgments 2, 4, 5, 6.) On August 31, 2011, the California Supreme Court denied Petitioner's petition for review without comment or citation to authority. (Lodgments 7, 8.)

Petitioner filed his initial federal petition on November 14, 2012, pursuant to 28 U.S.C. § 2254. On December 5, 2013, Petitioner filed his first amended petition, the claims of which the Court addresses. On August 20, 2014, Respondent filed an Answer and Memorandum of Points and Authorities in Support of the Answer. On December 14, 2014, the Magistrate Judge submitted a Report and Recommendation, recommending the petition's dismissal because Petitioner failed to (1) present any evidence suggesting that the California Court of Appeal's denial of his claims was contrary to, or an unreasonable application of, clearly established federal law; and (2) make any argument that further factual development was necessary to warrant an evidentiary hearing. On February 6, 2015, Petitioner filed his objections to the report, which asserted the same claims that he raised in his first amended petition.

## STANDARD OF REVIEW

District courts may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party objects to any portions of a magistrate judge's report, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made." *Id*.

"Habeas corpus is an 'extraordinary remedy' available only to those 'persons whom society has grievously wronged . . . .'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005) (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)). Federal courts may review petitions for writ of habeas corpus by persons in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000).

The petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA Section 2254(d), a habeas writ will not be granted regarding any claim adjudicated on the merits by the state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

Under the "contrary to" clause, a federal habeas court may grant relief if the state court arrived at a decision opposite to that reached by the Supreme Court on a question of law, or if it decided a case differently from the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06; *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Under the "unreasonable application" clause, the court may grant relief if (a) the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to

the facts of a particular case; or (b) if the state court either unreasonably extended or refused to extend a legal principle from Supreme Court precedent to a new context where it should or should not apply. *See Williams* at 407; *Andrade*, 538 U.S. at 63 & 73.

A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. Indeed, as long as neither the reasoning nor the result of the state court decision contradicts Supreme Court precedent, the decision will not be "contrary to" clearly established federal law. *Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). For purposes of § 2254(d), "clearly established federal law" means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade* at 72.

In addition, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Id.* at 75; *see Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *see also Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). To evaluate whether the state court's decision was objectively unreasonable, "a habeas court [must] determine what arguments or theories supported, or could have supported, the state-court decision and then [] ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with a prior decision of [the Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 88 (2011). To be sure, a federal court is not called upon to decide whether it agrees with the state court's determination; indeed, the court applies an extraordinarily deferential review. *See Andrade* at 75. Therefore, a state prisoner faces a heavy burden: to prove that the state court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. 86 at 103.

**DISCUSSION**

1    Absent one unexhausted claim, which the Court subsequently dismissed upon
Petitioner's request, Petitioner raised three claims in his first amended petition, which are the same claims asserted in his objections to the Magistrate Judge's report. First, Petitioner argues that his sentence of 25 years to life for conspiracy to commit murder constituted a disproportionate sentence in violation of the Eighth Amendment's ban against cruel and unusual punishment. Second, Petitioner argues that he was denied his constitutional rights to due process and a fair trial because the trial court erred by failing to instruct the jury on voluntary manslaughter as a lesser included offense to his murder charge. Third, Petitioner argues that his Fourteenth Amendment due process rights were violated because there was insufficient evidence to support his conviction for conspiracy to commit murder. The Court resolves each claim in turn.

**I. Claim One: Cruel and Unusual Punishment**

Under the Eighth Amendment, a criminal sentence constitutes cruel and unusual punishment if it is grossly disproportionate to the crimes committed. *Andrade*, 538 U.S. at 71. To address an Eighth Amendment challenge to a prison sentence, the Supreme Court has held that the "only relevant clearly established law [ ] is the gross disproportionality principle, the precise contours of which are unclear and applicable only in the exceedingly rare and extreme case." *Id*. at 73 (citation omitted) (internal quotation marks omitted); *see also Crosby v. Schwartz*, 678 F.3d 784, 791 (9th Cir. 2012).

For federal habeas relief under AEDPA, the Court has firmly established from its jurisprudence that the gross disproportionality principle applies to sentences for terms of years. *See id*. (affirming the California Court of Appeal's holding that a sentence of two consecutive terms for "third strike" convictions of two counts of petty theft was not grossly disproportional); *see also Ewing v. California*, 538 U.S. 11 (2003) (upholding a sentence of 25 years to life imposed for felony grand theft); *Harmelin v. Michigan*, 501 U.S. 957 (upholding a sentence of life without parole for

a first time offense of possession of a substantial amount of cocaine). Specifically, the Supreme Court has emphasized that in evaluating terms of years sentences, the analysis "does not require strict proportionality between crime and sentence; rather, it forbids only extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 60 (2010) (citations omitted) (internal quotation marks omitted).

Accordingly, to determine whether a terms of years sentence is grossly disproportionate, a federal habeas court must begin by comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. 48 at 60. If the defendant's case passes this threshold comparison, leading to an "inference of gross disproportionality," the court should compare the criminal's sentence with those imposed on other criminals in the same jurisdiction and compare sentences imposed for the same crime in other jurisdictions. *Id.* If this "comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* (*quoting Harmelin*, 501 U.S. at 1005) (Kennedy, J., concurring).

Petitioner argues that his sentence is grossly disproportionate because there is no evidence that he had the specific intent to agree with a coconspirator to murder a rival gang member. Specifically, he argues that his actions were a result of "classic, youthful bad judgment"; that he had no plan to kill anybody; and that his actions were harmless. To the contrary, the California Court of Appeal found that there was sufficient evidence to sustain Petitioner's conviction, reasoning:

> "[T]he record shows that defendant was aware of the risk to human life when he accompanied his fellow gang members to the [location of the shooting]. After he witnessed the shootings . . . , defendant continued with his gang-related activity by arming himself and going on a search for additional victims. This shows defendant consciously engaged in conduct that posed a serious threat to human life, a circumstance supporting a lengthy punishment.

(Lodgment 6 at 16.) In addition, as Respondent states in his Answer, Petitioner "actively participated in the planning and execution of the offense. He had a long-term gang affiliation, which was a major factor in the commission of the crime.

His conduct posed a serious danger of death or great bodily injury to innocent bystanders as well as rival gang members." The Court agrees. In brief, Petitioner's conduct created a high risk of death; therefore, the severity of his sentence is not grossly disproportionate.

Even though the Supreme Court's threshold analysis does not lead to an inference of gross disproportionality, the Court next compares Petitioner's sentence with "the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham* at 60. As noted in the report, there are multiple cases within the Ninth Circuit upholding the constitutionality of similar sentences for similar crimes. *See*, *e.g.*, *Contreras v. Yates*, No. 1:10–CV–01907, 2011 WL 1134446, (E.D. Cal. March 25, 2011) (denying a constitutional challenge to a 50 years to life sentence imposed on an eighteen-year-old convicted, *inter alia*, of conspiracy to commit murder); *Rodriguez v. Yates*, No. CIV S–07–853, 2009 WL 1212102 (E.D. Cal. May 5, 2009) (denying a constitutional challenge to a 25 years to life sentence for conspiracy to commit murder). After reviewing the foregoing cases, it is clear that Petitioner's sentence is comparable to sentences imposed upon other criminals for similar crimes; thus, Petitioner fails to establish a lack of proportionality.

In addition, Petitioner argues that his sentence is grossly disproportionate when compared to the lesser sentences received by his accomplices. The Supreme Court has held that a defendant cannot prove a constitutional violation simply by demonstrating that his sentence is disproportionate to those received by other defendants similarly situated. *See Pulley v. Harris*, 465 U.S. 37, 50–51 (1984). Notwithstanding the Supreme Court's holding, the California Court of Appeal points out significant differences between Petitioner and his fellow accomplices, his twin brother Jamel Davis and Rashad Ware. For example, both Davis and Ware were not present at the shooting; furthermore, they both pleaded guilty to charges, whereas Petitioner contested his guilt and elected to proceed to trial. (Lodgment 6 at 16.)

Accordingly, the state court rightly concluded that Petitioner's comparison of the sentences received by his accomplices does not establish gross disproportionality.

Finally, the Supreme Court has given extraordinary deference to state legislatures to determine the length of sentences for crimes classifiable as felonies. *See Rummel v. Estelle*, 445 U.S. 263 (1980) (holding that "for crimes concededly . . . punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative."). Generally, such sentences will not be overturned on Eighth Amendment grounds so long as they do not exceed the statutory maximum. *See Belgarde v. Montana,* 123 F.3d 1210, 1215 (9th Cir. 1997) (*citing United States v. McDougherty*, 920 F.2d 569, 576 (9th Cir. 1990) ). Further, "[the Supreme Court's] governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle. *Andrade* at 76.

In sum, Petitioner's sentence does not fall within the type of "exceedingly rare" circumstances that would violate the constitutional ban against cruel and unusual punishment. *Id.* at 73. Accordingly, the California Court of Appeal's affirmation of Petitioner's sentence was neither contrary to, nor an unreasonable application of, clearly established federal law nor an unreasonable determination of the facts in light of the evidence presented. Petitioner's Eighth Amendment claim is **DENIED**.

**II.  Claim Two: Failure to Instruct on a Lesser Included Offense**

Petitioner alleges that the trial court's omission to instruct the jury on voluntary manslaughter as a lesser included offense to his murder charge violated his constitutional rights. To begin, there is no clearly established Supreme Court authority requiring lesser included offense instructions in noncapital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980) ("We need not and do not decide whether the Due Process Clause would require the giving of [lesser included offense] instructions in a noncapital case."); *see also Powell v. Hatcher*, 407

Fed.App'x 226, 227 (9th Cir. 2011) (denying habeas relief and noting that in *Beck*, the Supreme Court expressly declined to rule on the issue). Moreover, the Ninth Circuit has held without reference to *Beck* that "the failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." *Windham v. Markle*, 163 F.3d 1092, 1106 (9th Cir. 1998). Accordingly, pursuant to clearly established federal law, the Court concludes Petitioner's claim that the state trial court failed to instruct on a lesser included offense does not raise a federal constitutional question.

Nevertheless, the Ninth Circuit has indicated that there could potentially be a cognizable habeas corpus claim if a request for a lesser included offense instruction was denied even though it was consistent with the defendant's theory of the case. *See Bashor* 730 F.2d 1228,1240. Here, Petitioner's requested instruction would be incongruous with the defendant's theory of the case, which the trial judge summarized – with Petitioner's counsel's concurrence – as follows: "[Petitioner] had no knowledge of anything. He went [to the location of the shooting] simply to aid and abet a drug deal. And, much to his surprise, shooting broke out, and he didn't know anything about it." (Lodgment 9 at 1391.)

Furthermore, under California law, the lesser offense of voluntary manslaughter based on heat of passion requires a showing of provocation caused by the victim or by conduct reasonably believed to have been engaged in by the victim. *People v. Manriquez*, 37 Cal.4th 547, 584 (2005). The California Court of Appeal concluded that there was no evidence that the victim, or those associated with the victim, had engaged in provocative conduct. According to the court: "Even assuming arguendo that a jury could find that defendant was operating under a heat of passion . . ., absent evidence of provocation associated with the victim, the trial court properly refused to instruct on voluntary manslaughter." (Lodgment 6 at 14.)

To conclude, the omission of the lesser included offense did not violate Petitioner's due process rights or otherwise deprive him of a fair trial. As stated in

the report: "Petitioner has not provided anything other than mere speculation that the failure to instruct on the lesser offense . . . impacted in any way the jury's decision to convict Petitioner of the conspiracy to commit murder charged in count 4." For the foregoing reasons, the California Court of Appeal's rejection of Petitioner's claim of instructional error was neither contrary to, nor an unreasonable application of, clearly established federal law, nor an unreasonable determination of the facts in light of the evidence presented. Therefore, Petitioner's claim of instructional error is **DENIED**.

### III. Claim Three: Insufficient Evidence to Support Conviction

Petitioner argues that his Fourteenth Amendment due process rights were violated because there was insufficient evidence to support his conviction for conspiracy to commit murder. The Supreme Court has made clear that federal habeas courts must "respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). That being so, in *Jackson* the Court announced the standard for determining whether there was insufficient evidence to support a conviction, holding that the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, [a] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. In other words, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011).

Prior to AEDPA, a federal habeas court applied the *Jackson* standard with explicit reference to state law by looking to the substantive elements of the criminal offense and by determining the evidence necessary for conviction. *See Jackson*, 443 U.S. 324 n.16; *see Juan H.*, 408 F.3d at 1274; *see also Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004). Under AEDPA, however, a habeas court may overturn a

1  state court decision rejecting an insufficient evidence claim only if the state court
2  decision was "objectively unreasonable." *Cavazos*, 132 S. Ct. at 4. Under this
3  "additional layer of "deference," "[a] petitioner for a federal writ of habeas corpus
4  faces a heavy burden when challenging the sufficiency of the evidence . . . on federal
5  due process grounds." *Juan H.* at 1274; *see also Wright v. West*, 505 U.S. 277, 284,
6  296 (1992) (emphasizing great deference to the trier of fact and "the sharply limited
7  nature of constitutional sufficiency review").

8  Under California law, "a conviction of conspiracy requires proof that the
9  defendant and another person had the specific intent to agree or conspire to commit
10 an offense, as well as the specific intent to commit the elements of that offense,
11 together with proof of the commission of an overt act by one or more of the parties
12 to such agreement in furtherance of the conspiracy." *People v. Morante*, 20 Cal.4th
13 403, 416 (1999) (*citing* California Penal Code §182(a)(1)) (internal quotation marks
14 omitted); *see also People v. Swain*, 12 Cal.4th 593, 600 (1996). And under
15 California Penal Code §182, the elements of a conspiracy are "sufficiently met by
16 circumstantial evidence, particularly when those circumstances are the defendant's
17 carrying out the agreed-upon crime." *People v. Martin*, 150 Cal.App.3d 148, 163
18 (1983). Likewise, a "conspiracy may be proved through circumstantial evidence
19 inferred from the conduct, relationship, interests, and activities of the alleged
20 conspirators before and during the alleged conspiracy." *People v. Prevost*, 60 Cal.
21 App. 4th 1382, 1399 (1998).

22 After reviewing the direct and circumstantial evidence in the light most
23 favorable to the prosecution, it is clear that a rational trier of fact could have found
24 Petitioner guilty of the essential elements of the crime beyond a reasonable doubt. A
25 rational fact-finder could have concluded that there was proof that Petitioner had the
26 specific intent to conspire with his fellow gang members to commit murder. For
27 example, Petitioner admitted that he agreed to accompany his fellow gang members
28 on a shooting "mission"; he admitted that he was expected to avenge his fellow gang

member's death; and he stated that he told his fellow gang members that he was going on a "mission" to "shoot somebody." (Lodgment 6 at 9-13.) Nevertheless, Petitioner claimed that he was merely pretending to agree to this mission because he was facing pressure and possibly severe discipline from his gang. (*Id*.) In response to this argument, the California Court of Appeal correctly pointed out that "the jury could reasonably conclude that defendant intended to agree with others to go on the shooting mission in order to comply with his gang's retaliation." (*Id*. at 11.)

Furthermore, a rational fact-finder could have concluded that Petitioner had specific intent to commit murder. For example, Petitioner admitted that he and his fellow gang members' plan was "the first person we see, we just gonna shoot 'em up"; he overtly armed himself with a weapon that was used in a fatal shooting just hours before; and he overtly advanced through rival gang territory looking for a "thuggish person" to shoot. (*see* Lodgment 1 at 247-48, 250-54, 268-69, 271.) In addition, as the state appellate court correctly noted, the defendant was aware that his conduct "created a high risk of death" and that if "the police had not thwarted defendant . . . , there could have been other shooting victims." (Lodgment 6 at 15-16.) In short, the evidence presented at trial, viewed in the light most favorable to the prosecution, was sufficient under *Jackson* to allow a rational trier of fact to find Petitioner guilty beyond a reasonable doubt.

Finally, the California Court of Appeal's decision neither conflicted with Supreme Court precedent nor arrived at a result on materially indistinguishable facts. Accordingly, after applying "an additional layer of deference" and looking to the substantive elements of the criminal offense and the evidence necessary for conviction, the Court finds that the state appellate court's decision to reject Petitioner's claim was not "objectively unreasonable." Therefore, the state appellate court's denial of Petitioner's claim was not based upon an "unreasonable application" of *Jackson* to the facts of this case.

In sum, after both looking to California law and viewing the evidence in the

1  light most favorable to the prosecution, the Court concludes that a rational trier of
2  fact could support the jury's verdict that Petitioner conspired to commit murder. In
3  addition, the state appellate court's decision was not an unreasonable application of
4  *Jackson* to the facts of this case. Accordingly, Petitioner's claim of insufficient
5  evidence is **DENIED**.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(1). This standard is "relatively low" because it does not require the petitioner to show that he should prevail on the merits. *Jennings v. Woodford,* 290 F.3d 1006, 1010 (9th Cir. 2002). To meet the standard, petitioner must only demonstrate one of the following: (1) the issues are debatable among jurists of reason; (2) a court could resolve the issues in a different manner; or (3) the questions are adequate to deserve encouragement to proceed further. *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000). Petitioner has not made a substantial showing of the denial of a constitutional right on his claims because according to clearly established federal law, no court could resolve the issues in a different manner and the issues are neither debatable nor adequate to proceed further. Therefore, the issuance of a certificate of appealability is denied.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

Based upon the application of AEDPA Section 2254(d), the Court concludes that the California Court of Appeal's reasoned opinion was neither contrary to, nor an unreasonable application of, clearly established federal law, nor based upon an unreasonable determination of the facts in light of the evidence. Accordingly, the Court **ADOPTS** the Report and Recommendation and **DENIES** Petitioner's Petition for a Writ of Habeas Corpus. The issuance of a certificate of appealability is **DENIED**.

**IT IS SO ORDERED**.

DATED: July 27, 2015

Hon. Roger T. Benitez
United States District Judge